IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OSCAR MEJIA and FRANCISCO RAMIREZ, on behalf of themselves and others similarly situated,** | Case No. 2:19-cv-04841-JDW |
| *Plaintiffs,* | |
| v. | |
| **KVK-TECH, INC. and 110 TERRY DR. LP,** | |
| *Defendants.* | |

## MEMORANDUM

The parties to this case ask the Court to approve their proposed settlement pursuant to 29 U.S.C. § 216(b). The Court has reviewed the facts and the proposed settlement and concludes that: i) the settlement is fair and reasonable; ii) the two named Plaintiffs are entitled to service awards; and iii) Plaintiffs' counsel has made a sufficient showing for an award of attorneys' fees.

**I.    BACKGROUND**

    **A.    Factual Allegations and Procedural History**

Oscar Mejia, Francisco Ramirez, and the thirty-one additional workers who opted-in to this collective action allege that they worked as laborers who performed mechanical, electrical, plumbing, and other construction work for KVK-Tech, Inc. and 110 Terry Dr., LP (collectively "KVK"). KVK manufactures generic drugs and is in the process of expanding its plant. Plaintiffs allege that rather than pay them on an hourly basis, KVK paid them a "day-rate." For example, KVK paid Mr. Mejia $125 per eight-hour workday and $187.50 per twelve-hour workday. Plaintiffs assert that they worked forty-five to sixty-five hours each week on a regular basis, but

the day-rate did not compensate them for hours worked over forty hours each week. Therefore, Plaintiffs contend that KVK violated its obligations under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") to pay them overtime. According to Plaintiffs, KVK owes them $371,601.79 in unpaid overtime from October 16, 2016, until January 15, 2020.

After Plaintiffs filed their Complaint, KVK contended that it was not liable under the FLSA because Plaintiffs are contractors who are employed by a third party. KVK also took the position that the alleged day-rate payments were simply the sum of hourly payments and included "bonus" payments for any time worked beyond eight hours per day. According to KVK, the daily bonuses offset any weekly overtime wages to which Plaintiffs might be entitled to. Finally, given the haphazard timekeeping system in place, KVK disputes how many hours Plaintiffs worked, including whether they worked more than forty hours each week. Indeed, KVK contends that Plaintiffs overestimated their alleged unpaid overtime and estimates that Plaintiffs would be entitled to about $150,000 if they prevailed.

The Parties presented these positions to the Honorable Elizabeth T. Hey over the course of two separate settlement conferences. Their efforts, and those of Judge Hey, led to a proposed settlement of this matter.

### B.     The Settlement

Under the terms of the settlement, KVK will pay a total of $475,000, distributed as follows: i) $306,666.67 will be paid to Plaintiffs and apportioned to each Plaintiff based on his estimated damages, as calculated by Plaintiffs' counsel; ii) $5,000 service awards will be paid to both Mr. Mejia and Mr. Ramirez; and iii) $158,333.33 will be paid to Plaintiffs' counsel in attorneys' fees and costs.

In the settlement, Plaintiffs agree to release KVK from "all legal or equitable claims … arising prior to January 15, 2020 and either asserted in or reasonably related to the Action," including the PMWA claim in their Complaint and any unasserted claim under the Pennsylvania Wage Payment and Collection Law. (ECF No. 27-1 at 5.)  The settlement also includes a choice of law and forum provision, and requests that the Court retain jurisdiction of this matter for the sole purpose of enforcing the terms of settlement.  In addition, the settlement contains an acknowledgment from the Plaintiffs, all of whom are Spanish-speaking, that their counsel reviewed all of the terms of the settlement with them in Spanish.

In their motion to approve the settlement, Plaintiffs' counsel asserts that: i) Peter Winebrake spent 71.1 hours on this case, with a suggested rate of $670/hour; ii) R. Andrew Santillo spent 9.3 hours on this case, with a suggested rate of $450/hour; iii) Mark J. Gottesfeld spent 8.8 hours on this case, with a suggested rate of $360/hour; iv) Louis Pechman spent 44.3 hours on this case, with a suggested rate of $700/hour; v) Catalina Cadavid spent 171.7 hours on this case, with a suggested rate of $260/hour; and vi) paralegals/clerical personnel spent 44.65 hours on this case, with a suggested rate of $100/hour.  In addition, Plaintiffs' counsel represents that they incurred $2,294.55 in expenses over the course of this matter.[1]  Thus, in total, Plaintiff's counsel has $135,325.80 in fees, as well as $2,294.55 in expenses.  However, the settlement contemplates a payment of $156,038.78 in attorneys' fees to Plaintiffs' counsel who undertook representation on a pure contingency fee basis.

---

[1]  Plaintiffs use this number throughout their memorandum.  However, the Court notes that there appears to be a discrepancy, as the attorney declarations identify $2,286.50 in costs.  (See ECF Nos. 27-2 at ¶ 23, 27-3 at ¶ 14.)  Because this discrepancy only amounts to a difference of $8.05, the Court accepts the costs as described throughout the memorandum.

**II.     LEGAL STANDARD**

Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours[.]" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  There are only two ways that parties can compromise claims under the FLSA:  (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a settlement that a district court approves pursuant to 29 U.S.C. § 216(b).  *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Kraus v. PA Fit II, LLC*, 155 F. Supp.3d 516, 522-23 (E.D. Pa. 2016) (courts in Third Circuit generally look to *Lynn's Food* decision for guidance).  In general, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Id.* at 523 (quotation omitted).

"A proposed settlement resolves a bona fide dispute where its terms 'reflect a reasonable compromise over issues, such as ... back wages, that are actually in dispute.'" *Id.* (same).  "A dispute is 'bona fide' where it involves 'factual issues rather than legal issues such as the statute's coverage and applicability.'"  *Flores v. Eagle Diner Corp.*, No. 18-cv-1206, 2019 WL 3943355, at * 9 (E.D. Pa. Aug. 21, 2019) (quotation omitted).  "[F]or a bona fide dispute to exist, … there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.  If a bona fide dispute exists, courts then consider whether the settlement is fair and reasonable to the employee and whether the proposed settlement

would frustrate implementation of the FLSA. *See Kauffman v. U-Haul Int'l, Inc.*, No. 16-cv-4580, 2019 WL 1785453, at *2 (E.D. Pa. Apr. 24, 2019) (citation omitted).

The FLSA provides that, in addition to any judgment awarded to the plaintiff, the Court "**shall** … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). "The Court is required to 'articulate' the basis for a fee award. *Kraus*, 155 F. Supp. 3d at 534 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000)).

### III.   ANALYSIS

#### A.   Approval of the Settlement

This case presents a bona fide dispute. Plaintiffs submitted a claim for unpaid overtime wages under the FLSA. However, KVK contends that it did not employ Plaintiffs and, therefore, was not liable to pay them. Had this matter not settled, resolution of this defense would have involved a fact-specific inquiry regarding the relationship between KVK, Plaintiffs, and the third party that facilitated payments to them. There is also a bona fide dispute over the amount of overtime hours that Plaintiffs worked, as the timekeeping system was admittedly haphazard. Indeed, there are no Weekly Attendance Sheets for many of the workweeks at issue. In addition, identifying each alleged daily "bonus" payment to Plaintiffs and offsetting those amounts against any alleged overtime due would be a fact-intensive and time-consuming endeavor.

Having determined that a bona fide dispute exists, the Court next concludes that the settlement is fair and reasonable. In undertaking this analysis, district courts within the Third Circuit generally focus on what are referred to as the *Girsh* factors. *See Alvarez v. BI Inc.*, No. 16-cv-2705, 2020 WL 1694294, at *5 (E.D. Pa. Apr. 6, 2020). In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit outlined evaluative criteria for the fairness of class action

settlements, and Courts have used those same criteria when deciding whether to approve collective action settlements under the FLSA. As relevant here, these include "(1) the complexity, expense and likely duration of the litigation …; (2) the reaction of the class to the settlement …; (3) the stage of the proceedings and the amount of discovery completed …; (4) the risks of establishing liability …; (5) the risks of establishing damages …; (6) the risks of maintaining the class action through the trial …; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery …; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation …." *Girsh*, 521 F.2d at 157. Here, though discovery is complete, expensive and complex motions practice would be likely absent a settlement. Indeed, the Parties anticipated that KVK would file a motion to decertify the collective and would also seek summary judgment. Depending on how the Court resolved those motions, pre-trial motion practice might have resulted. The parties engaged in at least two days' worth of arms-length settlement negotiations, facilitated by Judge Hey, and the proposed settlement takes into account the significant hurdles that Plaintiffs faced in establishing liability and the amount of damages they sought. On the other hand, given the fact that the settlement fund represents nearly 83% of the unpaid overtime wages that Plaintiffs claimed KVK owed, the settlement fund falls well within a range of reasonableness.

The Court notes that the Settlement Agreement reports that Plaintiffs' Counsel has reviewed the terms of the settlement with the Plaintiffs. However, it does not appear that Plaintiffs' Counsel has had the settlement agreement translated into Spanish. They should, so that the Plaintiffs can read for themselves the agreement they are signing (rather than relying on an oral translation). The Court will therefore require Plaintiffs' Counsel to have the agreement translated and to make the translated version available to any Plaintiff that wants a copy.

Aside from the settlement fund itself, the Court must also determine whether the $5,000 service awards for Mr. Mejia and Mr. Ramirez are fair and reasonable. Service awards, also known as incentive awards, enhancement awards, or service payments, "are common in class actions that result in a common fund for distribution to the class" and are meant "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *Alvarez*, 2020 WL 1694294 at *6 (quotation omitted). "[W]here the proposed incentive award comes out of the common fund independent of attorneys' fees, as it does here, the court must 'carefully review' the request for fairness to other class members." *Id.* (citation omitted). The Court cannot approve such awards "without a substantial basis to demonstrate that the individual[s] provided services for the Class and incurred risks during the course of the litigation." *Id.* (quotation omitted).

The proposed service awards of $5,000 to both Mr. Mejia and Mr. Ramirez are fair and reasonable, and there is a substantial basis to establish the services they provided during the litigation. Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken. In addition to coming forward to represent the interests of their fellow employees, Mr. Mejia and Mr. Ramirez were diligent throughout this litigation. In fact, many Plaintiffs joined this case in its infancy, after Mr. Mejia and Mr. Ramirez spread the word about their lawsuit. Finally, as Plaintiffs point out, a service award of $5,000 is in line with similar awards approved in other collective/class actions in this district. *See, e.g.*, *Alvarez*, 2020 WL 1694294, at *7 (approving service of award of $15,000 to each named plaintiff); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211, at *3 (E.D. Pa. Oct. 23, 2019) (approving service award of $10,000 to plaintiff); *Myers v. Jani-King of*

*Philadelphia, Inc.*, No. 09-cv-1738, 2019 WL 4034736, at *10 (E.D. Pa. Aug. 26, 2019) (approving service award of $10,000 to each plaintiff).

Finally, the proposed settlement does not impermissibly frustrate implementation of the FLSA in the workplace. That is because "it does not include broad waiver provisions, or a confidentiality agreement, nor did the parties attempt to file the settlement agreement under seal[.]" *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, No. 16-cv-2663, 2017 WL 2215264, at *3 (E.D. Pa. May 18, 2017) (internal citations omitted). Indeed, the release is limited to "all legal or equitable claims … arising prior to January 15, 2020 and either asserted in or reasonably related to the Action," including the PMWA claim in their Complaint and any unasserted claim under the Pennsylvania Wage Payment and Collection Law. (ECF No. 27-1 at 5.) This is sufficiently tailored so as not to frustrate implementation of the FLSA.

### B. Attorneys' Fees

Courts in the Third Circuit generally use the percentage-of-recovery method to evaluate attorneys' fees requests in wage and hour cases like this one. *See Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at * 3 (E.D. Pa. Aug. 24, 2015) (citation omitted). "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20-45%." *Id.* (collecting cases). Here, Plaintiffs' counsel seeks an award in the middle of that range. Moreover, the requested fee is reasonable in light of each of the *Gunter* factors: "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases." *Gunter*, 223 F.3d at 195 n.1. Moreover, the Court is also mindful

8

that Plaintiffs' counsel successfully secured a settlement amount that represents nearly 83% of the unpaid overtime wages that Plaintiffs claimed KVK owed.

Since this is a "mainstream case," the Court will also perform a lodestar crosscheck. *See id.* To determine the lodestar award, the Court multiplies the number of hours the attorney(s) reasonably worked on the case by "a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.* "[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (quotation omitted). The lodestar crosscheck confirms that the requested attorneys' fees are reasonable. Indeed, utilizing the fee schedule developed by Philadelphia Community Legal Services, the lodestar award would be $135,325.80, as set forth in Plaintiffs' unopposed motion. If the fee award to Plaintiffs' counsel is $156,038.78, as requested, the lodestar multiplier will be 1.153. This multiple falls within the generally accepted range and confirms the reasonableness of the fee award.

## IV. CONCLUSION

The Court will approve the settlement, including the service awards to the named Plaintiffs and the proposed attorneys' fee award. An appropriate Order follows.

**BY THE COURT:**

September 4, 2020

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

9